UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- x

TROY TAYLOR, LYNELL SPRUILL AND
TYRON SPRUILL,

                                   Plaintiff,

                -against-

CITY OF NEW YORK; Police Officer Alexis
Malave (Shield No. 26323), Police Officers JOHN
and JANE DOES 1 through 10, individually and in
their official capacities, (the names John and Jane
Doe being fictitious, as the true names are presently
unknown),

                              Defendants.

---------------------------------------------------------------- x

**COMPLAINT**

Jury Trial Demanded

## NATURE OF THE ACTION

1.     This is an action to recover money damages arising out of the violation of plaintiffs' rights under the Constitution.

## JURISDICTION AND VENUE

2.     This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the Constitution of the United States.

3.     The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343 and 1367(a).

4.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 (b) and (c).

## JURY DEMAND

5.      Plaintiff demands a trial by jury in this action.

## PARTIES

6.      Plaintiffs Troy Taylor, Lynell Spruill and Tyron Spruill are residents of Kings County in the City and State of New York.

7.      Defendant City of New York is a municipal corporation organized under the laws of the State of New York.  It operates the NYPD, a department or agency of defendant City of New York responsible for the appointment, training, supervision, promotion and discipline of police officers and supervisory police officers, including the individually named defendants herein.

8.      Defendants Police Officer Alexis Malave, at all times relevant herein, was an officer, employee and agent of the NYPD.  Defendants are sued in their individual and official capacities.

9.      At all times relevant defendants John and Jane Doe 1 through 10 were police officers, detectives or supervisors employed by the NYPD.  Plaintiff does not know the real names and shield numbers of defendants John and Jane Doe 1 through 10.

10.     At all times relevant herein, defendants John and Jane Doe 1 through 10 were acting as agents, servants and employees of defendant City of New York and the

2

NYPD.  Defendants John and Jane Doe 1 through 10 are sued in their individual and official capacities.

11.    At all times relevant herein, all individual defendants were acting under color of state law.

## STATEMENT OF FACTS

12.    At approximately 4:15 p.m. on January 20, 2013, plaintiffs were lawfully in the vicinity of 200 Throop Avenue in Brooklyn, New York.

13.    Plaintiffs, as well as their fifteen-year-old cousin Jahlil, were at the abovementioned located to see their friend, Kevin Rivera who lives on the 12th floor of the building.

14.    Defendant officers approached plaintiffs demanding to know whom they were there to see.

15.    Plaintiffs responded saying that they were there to see their friend Kevin who lives on the twelfth floor.  They did not know the specific apartment number but told the officers they could take them to the apartment.

16.    The officers refused to look into plaintiffs' assertion accusing the plaintiffs of trespassing because they did not know the apartment number.

17.    Jahlil Spruill was not detained due to his age.

18.    Plaintiffs were then eventually taken to the precinct.

19.    The officers falsely informed employees of the Kings County District

Attorney's Office that plaintiffs had trespassed.

20.     The officers had not observed plaintiffs trespass.

21.     At arraignment, the criminal charges against plaintiffs were adjourned in contemplation of dismissal.

22.     After spending approximately 26 hours in custody, plaintiffs were released.

23.     Plaintiffs suffered damage as a result of defendants' actions.  Plaintiffs were deprived of their liberty, suffered emotional distress, mental anguish, fear and anxiety.

## FIRST CLAIM
### Unlawful Stop and Search

24.     Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

25.     Defendants violated the Fourth and Fourteenth Amendments because they stopped and searched plaintiff without reasonable suspicion.

26.     As a direct and proximate result of this unlawful conduct, plaintiffs sustained the damages herein before alleged.

## SECOND CLAIM
### False Arrest

27.     Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

28.     Defendants violated the Fourth and Fourteenth Amendments because they arrested plaintiff without probable cause.

29.      As a direct and proximate result of this unlawful conduct, plaintiffs sustained the damages hereinbefore alleged.

30.     As a direct and proximate result of the misconduct and abuse of authority stated above, plaintiffs sustained the damages alleged herein.

31.     As a direct and proximate result of the misconduct and abuse of authority stated above, plaintiffs sustained the damages alleged herein.

## THIRD CLAIM
### Failure to Intervene

32.     Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

33.     Those defendants that were present but did not actively participate in the aforementioned unlawful conduct observed such conduct, had an opportunity prevent such conduct, had a duty to intervene and prevent such conduct and failed to intervene.

5

34.     Accordingly, the defendants who failed to intervene violated the Fourth and Fourteenth Amendments.

35.     As a direct and proximate result of this unlawful conduct, plaintiffs sustained the damages hereinbefore alleged.

**FOURTH CLAIM**
**Monell Claim**

36.     Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

37.     The City of New York directly caused the constitutional violations suffered by plaintiff.

38.     Upon information and belief, the City of New York, at all relevant times herein, was aware from notices of claim, lawsuits, complaints filed with the City, and from the City's own observations, that many of its police officers, including the individual defendants, are unfit officers who have the propensity to commit the acts alleged herein.  Nevertheless, the City of New York exercised deliberate indifference by failing to take remedial action.  The City failed to properly train, retrain, supervise, discipline, and monitor the officers and improperly retained and utilized them.  Moreover, upon information and belief, the City of New York failed to adequately investigate prior complaints filed against the officers.

6

39.    Moreover, The City of New York has implemented and continues to conduct, enforce and sanction an unlawful vertical patrol and trespass arrest policy which has resulted in a pattern and practice of illegal stops, seizures, questioning, searches, and false arrests of authorized visitors to NYCHA residences.

40.    The NYPD first implemented vertical patrols in 1991.  The protocol was adopted to address crime, and specifically drug activity, in NYCHA residences.  It is considered an "important component of the [NYPD]'s drug control strategy." (NYPD Patrol Guide Procedure 212-59).

41.    In the course of a vertical patrol, multiple NYPD officers approach anyone they observe in the common areas of a building or to affirmatively establish a connection to a specific building resident.  If an individual stopped and seized pursuant to a vertical patrol fails to identify himself to the satisfaction of the officer, or is unable to demonstrate to the satisfaction of the officer, that he or she is going to, or coming from, a visit to s resident or his or her own home, he or she is arrested for trespass.  If the individual has not already been searched for contraband pursuant to the seizure, they are subjected to a search for contraband pursuant to their arrest.

42.    The NYPD's policy amounts to a roving pedestrian checkpoint wherein NYPD officers indiscriminately stop, seize, question, and even search individuals in the common areas of NYCHA residences in the absence of individualized objective facts.

43.     In addition to directed or organized vertical sweeps in NYCHA residences, NYPD officers also sweep NYCHA residences for alleged trespassers on an informal basis.

44.     Trespassing in public housing is a Class B misdemeanor under subsection (e) of NYPL Section 140.10, which was enacted in 1992, shortly after the inception of the vertical program (L. 1992 ch. 434).

45.     The number of trespass arrests in NYCHA residences has surged.  The City has not provided any legitimate and neutral explanation for this rise in the arrest rate.

46.     Defendant's failure to provide adequate guidance, training, and support to NYPD officers regarding how to conduct vertical patrols, including whom to stop, question, seize, search and arrest for trespass, results in a *de facto* roving checkpoint and a pattern and practice of unlawful stops and seizures.

47.     The only guiding principles provided to NYPD officers are consistent with, and reflective of, a policy, practice and custom of reckless arrests based on less than probable cause.

48.     Defendant's vertical patrol policy and trespass arrest practices, even if diligently followed, cause a pattern and practice of false arrests of many people who are lawfully on the premises.  Without probable cause to suspect criminal activity, the

individual is forced to defeat a presumption of guilt with the presentation of documents or witnesses at the time of arrest.

49.     In addition to screening for suspected trespassers, another purported purpose of the vertical patrol program and trespass arrest practices is to screen and police NYCHA residents themselves.  According to Inspector Michael C. Phipps, Commanding Officer, Housing Bureau Manhattan, the NYPD has the authority to arrest building residents and charge them with second degree trespass for entering certain areas of their own building, "namely, the roof landings, the rooftops, the store rooms, maintenance areas and basements."  Testimony of Insp. Michael C. Phipps, New york City Council Committee on Public Housing (April 29, 2004) at 24 (Phipps Testimony").  Inspector Phipps testified that "[w]hen tenants sign lease agreements with the Housing Authority, they are advised not to enter" these areas in their buildings. *Id.*

50.     In fact, NYCHA leases do not contain any such clause.  A NYCHA lease merely provides that, when given proper notice, tenants must comply with all lawful rules and regulations promulgated by the Landlord.  For example, signs posted in or around lobbies of NYCHA residences, if any, may state "No Trespassing" or "Loitering and trespassing in lobby, roof, hallway and stairs is not permitted. Violators are subject to arrest and prosecution by the Police Department."

51.     Trespassing is an offense requiring a person unlawfully enter or remain in a prohibited area.  There is no law prohibiting a resident's mere presence in or around the stairwells, hallways, roofs, or roof landings in his or her own apartment building.  Indeed, there could be no lawful regulation or notice provision prohibiting entirely a resident's mere presence in his or her own hallway or stairwell.

52.     Loitering also requires a specified unlawful purpose for being present at a location, such as "begging," P.L. section 240.35(1); gambling, P.L. section 240.35(2); sexual conduct P.L. section 240.35(3); possessing a controlled substance, P.L. section 240.36 or engaging in prostitution, P.L. section 240.37.

53.     Thus, there is no legal basis for wholesale stopping. seizing, questioning, searching and arresting individuals for mere presence in lobbies, roofs,hallways, and stairwells in and around NYCHA residences.  Yet defendant has enforced, promoted, encouraged and sanctioned these customs and practices.

54.     The City has failed to supervise and discipline NYPD officers who unlawfully stop, question, seize, search, and arrest individuals for trespass.   On information and belief, Defendant does not monitor improper stops, seizures, and searches for trespass.  Nor has the Defendant instituted any follow up procedure or disciplinary action when charges are dismissed or where it is otherwise established that an individual was arrestee without probable cause.

55.     The aforesaid conduct by the City of New York violated plaintiff's rights under 42 U.S.C. § 1983 and the Fourth, Sixth and Fourteenth Amendments to the United States Constitution.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiffs respectfully requests judgment against defendants as follows:

(a) Compensatory damages against all defendants, jointly and severally;

(b) Punitive damages against the individual defendants, jointly and severally;

(c) Reasonable attorneys' fees and costs pursuant to 28 U.S.C. § 1988; and

(d) Such other and further relief as this Court deems just and proper.

DATED:     February 27, 2014
           New York, New York

ROBERT MARINELLI

_____/s/_____
Robert Marinelli
299 Broadway, Ste. 1501
New York, New York 10007
(212) 822-1427
robmarinelli@gmail.com

*Attorney for plaintiffs*